**DEFENDANTS**

RICO MUNN, in his personal and official capacity;

ELIZABETH FRANCIS, in her personal and official capacity;

MICHAEL SCHREINER, in his personal and official capacity;

CARI ROBERTS, in her personal and official capacity;

ZACHERY SAMPLES, in his personal and official capacity;

DAVID WALLER, in his personal and official capacity;

NICHOLAS KLOBERDANZ, in his personal and official capacity;

GREGORY CAZZELL, in his personal and official capacity;

UNKNOWN APS SECURITY OFFICER, in his personal and official capacity;

BRANDON EYRE, in his personal and official capacity;;

UNKNOWN APS CO-CONSPIRATORS, in their personal and official capacities; and

THE CITY OF AURORA, COLORADO

**B. DEFENDANTS' INFORMATION**

**Defendant 5:**
Zachery Samples | 15001 E Alameda Pkwy, Aurora, CO 80012 303-739-6000

**Defendant 6:**
David Waller | 15001 E Alameda Pkwy, Aurora, CO 80012

**Defendant 7:**
Nicholas Kloberdanz | Edu. Svcs. Center 1 - 15701 E 1st Ave. Ste.3 110, Aurora, CO 80011 303-367-3060

**Defendant 8:**
Gregory Cazzell | Edu. Svcs. Center 1 - 15701 E 1st Ave. Ste. 110, Aurora, CO 80011 303-367-3060 | grcazzell@aps.k12.co.us

**Defendant 9:**
Unknown APS Security Officer | Edu. Svcs. Center 1 -15701 E 1st Ave. Ste. 110, Aurora, CO 80011

**Defendant 10:**
Brandon Eyre | Edu. Svcs. Center 1 - 15701 E 1st Ave. Ste. 206, Aurora, CO 80011 303-367-3060 | bjeyre@aurorak12.org

**Defendant 11:**
Unknown APS Co-Conspirators | Edu. Svcs. Center 1 - 15701 E 1st Ave. Ste. 206, Aurora, CO 80011

**Defendant 12:**
The City of Aurora, Colorado | City Attorney Daniel Brotzman | 15151 E. Alameda Parkway, Suite 5300 Aurora, CO 80012  |  303-739-7030  | brotzma@auroragov.org

**Defendant 13:**
Adams-Arapahoe 28J School District | Risk Manager | Edu. Svcs. Center 1 - 15701 E 1st Ave. Ste. 206, Aurora, CO 80011 | 303-367-3060


## D. STATEMENT OF CLAIMS

# Introduction

1. **COMES NOW** Plaintiff Tiffany Grays, appearing pro se makes the following Complaint under 42 USC §1983 for the violation of the plaintiff's civil rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States to deprive the plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983 as the willfully failed duties to serve and protect from Aurora Colorado Police Department, ("APD") Officers: Zachery Samples ("Samples") and David S. Waller ("Waller") who conspired with Aurora [Colorado] Public Schools ("APS") Security Officers: Nicholas Kloberdanz ("Kloberdanz"), Unknown APS Security Officer (collectively "Officers"), The City of Aurora, Colorado, Unknown APS Co-Conspirators, Director of Security for APS Gregory Cazzell, (Cazzell"), 2018 Aurora Frontier Principal Cari Roberts ("Roberts"), and APS Superintendent Rico Munn, ("Munn"), who all

conspired with internal and external legal counsel for APS, Brandon Eyre ("Eyre"),

Michael Schreiner, ("Schreiner"), and Elizabeth Francis ("Francis"), (all collectively

"Defendants"), all in their professional and personal capacities as all conspired to deprive

the rights of Aurora native and APS alum Colorado citizen Plaintiff since May of 2018

through perpetuity from being upon APS public schools property to participate in the

education of Plaintiff's children, family members, or community members, as well as

exercising her rights to address the governmental agency APS Board of Education

("BOE") in person on February 16, 2021 and March 24, 2021 as all other citizens. Thus,

Defendants have violated the Equal Protection clause of the 14th Amendment to the U.S.

Constitution because Defendants did not protect Plaintiff as other similarly situated

citizens and community members expressing different beliefs in person. Defendants have

violated the First Amendment as Plaintiff's expression, assembly, and the right to petition

the governmental entity APS BOE for redress in person regarding ending the

disproportionate discipline of Blacks in APS was denied. Said conspired deprivations

were conducted under Aurora Municipal Ordinance 94-71.(4) which violates (i) the

Substantive Due Process clause of the Fourteenth Amendment, in that it is vague and

overbroad as it permits any person for any reason to deny any person the rights to equal

enjoyment of petitioning the governmental entity upon public property; (ii) violates Ms.

Grays' free speech rights in various ways in violation of the First Amendment; (iii)

Ordinance 94-71.(4) constitutes a substantial burden on Ms. Grays' free exercise of

liberties and religion as she is free to speak and be upon public property in the name of

Jesus Christ as guaranteed by the First Amendment, and does not survive strict scrutiny;

resulting in the conduct of Defendants violating the Accommodation Clause all due to

Plaintiff's race, sex and/or in retaliation for Plaintiff's engagement in protected activities of making complaints to the Colorado Civil Rights Division, APS, APD, and community members. Pursuant to Fed. R. Civ. P. 8 and 9, Plaintiff files this detailed Amended Verified Complaint which relates back to the original Complaint.

## <u>Certification</u>

2.  Plaintiff pursuant to Colorado Revised Statue § 24-10-109 served the Notice of Claims via Certified Mail to the City of Aurora, Colorado on Daniel L. Brotzman, Aurora, Colorado City Attorney and Aurora Public Schools via Julie Mileham, Manager, Risk Management, on June 18, 2021. **(Appendix 1).** Plaintiff did not receive a denial of claims from either government entity.

3.  Plaintiff brought claims of denial of public accommodation with the Colorado Civil Rights Division who found no cause giving Plaintiff until April 15, 2022 **(Appendix 2)** to file her claims in Denver, Colorado district court, to which Plaintiff will comply.

## <u>Jurisdiction & Venue</u>

4.      This action arises under Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      Claims for relief that are based on the Colorado Constitution, have the same nucleus of operative facts and are so related to the federal-law claims that they form part

of the same case or controversy. This Court has jurisdiction over the supplemental state-law claims pursuant to 28 U.S.C. § 1367.

6.        Declaratory Judgment is appropriate through 28 U.S. Code § 2201(a).

7.        Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). The Defendants work for or are a governmental entity, within the District of Colorado, and all relevant events occurred and will occur in the District of Colorado.

## Parties

8.        Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference.

9.        *Pro se* Plaintiff Tiffany Grays, an African American female, native of Aurora, Colorado, a person considered to be a community member and of the public according to APS policies, who also graduated and attended Aurora Public School throughout childhood; and has been the single parent of two daughters who until 2018 or 2020 was enrolled, registered and attending Aurora Public Schools for the previous fifteen years; without either child receiving any disciplinary action yet alone any out of school suspensions, nor did Ms. Grays have any negative interactions with any APS employee until and since the admitted erroneous and unjustified No Trespass Directive for all APS properties was issued against her on May 07, 2018 and later rescinded on May 17, 2021.

10.      Defendant Elizabeth Francis, CO Bar # 48523, a white female attorney who works in Boulder, Colorado as an attorney who represents APS and its employees in various legal matters through the law firm Caplan & Earnest, through conspiracy and/or

in deprivation of Plaintiff's rights afforded under the U.S. Constitution, is being named in her personal and official capacity.

11.      Defendant Michael Schreiner, CO Bar # 15226, a white male attorney who works in Boulder, Colorado as an attorney who represents APS and its employees in various matters through the law firm Caplan & Earnest. Schreiner is being named in his professional and personal capacity.

12. Defendant, Cari Roberts a white female – at the commencement of Plaintiff's claims was – an APS twenty+-year veteran and Principal at Aurora Frontier in Aurora, Colorado which receives Federal funds and its governmental entity of the municipality of Aurora, Colorado, APS, by virtue of her own conduct and state of mind also violated the Constitutional Rights of the Plaintiff. But for Roberts' first issued yet later rescinded no trespass issued in May 2018, Plaintiff would never have suffered any subsequent deprivation of rights as alleged in this Complaint. Roberts is being named in her professional and personal capacity.

13.      Defendant, Zachery Samples, a white male Officer of the Aurora Police Department, headquartered at 15001 E Alameda Pkwy, Aurora, CO 80012 which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado, by virtue of his own conduct and state of mind also violated the Constitutional Rights of the Plaintiff, failing to intervene, failed to equally protect and serve the citizen Plaintiff, resulting Samples failure to perform in accordance with the City of Aurora's Core 4. The misconduct of Officer Samples is further substantiated in the Consent Decree issued by Colorado Attorney General in 2020[1]. Samples is being named in his professional and personal capacity.

14.      Defendant, David Waller, a white male Officer of the Aurora Police Department, headquartered at 15001 E Alameda Pkwy, Aurora, CO 80012 which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado, by virtue of his own conduct and state of mind also violated the Constitutional Rights of the Plaintiff, failing to intervene, failed to equally protect and serve the citizen Plaintiff, resulting Samples failure to perform in accordance with the City of Aurora's Core 4. The misconduct of Officer Waller is further substantiated in the Consent Decree issued by Colorado Attorney General in 2020[1]. Waller is being named in his professional and personal capacity.

15. Defendant, Nicholas Kloberdanz a white male Security Officer in Aurora Public Schools headquartered in Aurora, CO 80011, which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado, by virtue of his own conduct and state of mind also violated the Constitutional Rights of the Plaintiff. Kloberdanz is being named in his professional and personal capacity.

16. Defendant, Gregory Cazzell, a white male Director of Security for Aurora Public Schools headquartered in Aurora, CO 80011, which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado, by virtue of his own conduct and state of mind also violated the Constitutional Rights of the Plaintiff. Cazzell is being named in his professional and personal capacity.

17. Defendant, Unknown APS Security Officer a Black male Security Dispatcher for Aurora Public Schools headquartered in Aurora, CO 80011, which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado. Unknown APS Security Officer is being named in his professional and personal capacity.

18. Defendant, Rico Munn APS Superintendent, a Black male headquartered in Aurora, CO 80011, which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado. Munn is being named in his professional and personal capacity.

19. Defendant, Brandon Eyre CO Bar # 44795, a male headquartered in Aurora, CO 80011, which receives Federal funds and is a governmental entity of the municipality of Aurora, Colorado, by virtue of his own conduct and state of mind also violated the Constitutional Rights of the Plaintiff. Eyre is being named in his professional and personal capacity.

20. Defendant, Unknown APS Co-Conspirators ("Unknown Conspirators") who conspired with other named Defendant(s) and/or complicit thorough intent inaction caused and/or contributed to the deprivation of Plaintiff's known and clearly established rights. Unknown Conspirators may be current or former APS employees, APS contractors, APS agents, APS representative, or they may also be a person who participated with or in the denial of Plaintiff's rights with any other Defendant named in this Complaint.

21. Adams-Arapahoe 28J School District ("Aurora Public Schools" or "APS") of Aurora, Colorado is currently or was at the relevant time the employer for Unknown Conspirators, Munn, Eyre, Kloberdanz, and Cazzell, is a governmental entity of public schools.

22. The City of Aurora, Colorado ("City") responsible for all APD Officers involved and the municipality in which all individual Defendants are perform duties owed to the Plaintiff, yet has been where Defendants have deprived Plaintiff's rights. The City is also responsible for the law which had deprived Plaintiff of her Constitutional Rights.

## **Background**

23.     Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them

herein by reference.

24. The catalyst and initial violation occurred with Plaintiff's minor dark-skinned African

American daughter and the White staff at Aurora Frontier on May 02, 2018. Plaintiff's

daughter attended Aurora Frontier for four consecutive years, without incident. Plaintiff's

daughter had been in APS from grades Kindergarten in 2011 through sixth grade in 2018

having never been previously suspended or even receiving so much as a referral to the

office in APS or other public school.

---

[1] https://www.cpr.org/2021/09/15/racist-policing-and-inappropriate-use-of-force-aurora-police-fire-rescue-routinely-violate-state-and-federal-law-ag-finds/

25. On May 02, 2018, White Aurora Frontier Assistant Principal Janelle Kirkley suspended

Plaintiff's daughter for what was originally stated to be physical contact with another

student, but was later changed to detrimental behavior. Upon exploration of the facts,

Plaintiff immediately disputed the suspension as it was harsh as there were 21 other

disciplinary actions which could have been performed given the facts. While the White

Assistant Principal Janelle Kirkley and White Principal Cari Roberts declined to correct

the harsh punishment, Plaintiff pursued and eventually won reversal – rescission **(Exhibit**

**1)** - through conducting her own investigation and addressing the APS Board of

Education.

26. Said recission came only after APS issued the first of many trespasses against the

Plaintiff in response to Plaintiff's exercise of rights afforded to all under the First and

Fourteenth Amendments. On May 07, 2018 Aurora Police Department choosing to

participate in the unlawful denial of Plaintiff's rights, in collusion with Aurora Public Schools, beginning with Officer Kristopher McDowell's' assistance and subsequent betrayal of Federal Statutes while at Aurora Frontier, located at 3200 S Jericho Way, Aurora, CO 80015.

27. While APS would admit the catalytic deprivation of the Plaintiff's child's rights to educated and educated in a safe learning environment free from harsh punishments and the subsequent denial Plaintiff's right to be upon APS public property to participate in her child's education were done in err through the recission on May 17, 2018, APS through Michael Schreiner and Elizabeth Francis would go on the issue a subsequent arbitrary No Trespass Directive for all APS properties on August 24, 2018. Said arbitrary No Trespass Directive was issued when Plaintiff was not on APS property and only in retaliation for Plaintiff's appropriate conduct in Arapahoe County civil suit seeking to compel the governmental agency to comply with the law.

## Facts

28.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference.

29. As a citizen of the United States of America, Plaintiff is entitled to equal rights and protections afforded through the U.S. Constitution.

30. Since 2018 Defendants Samples, Waller, Kloberdanz, Cazzell, Munn, Eyre, Schreiner, Roberts, and Unknown Conspirators cancelled Plaintiff's entitlement to equal rights and protections afforded through the U.S. Constitution without just cause.

31. Defendants Samples, Waller, Francis, City, Kloberdanz, Cazzell, Munn, Eyre, Schreiner, Roberts, and Unknown Conspirators had notice that it is clearly established under law that the deprivation of Plaintiff's rights afforded under the U.S. Constitution is a violation of 42 USC §1983 and it is settled case law that the plaintiff has standing resulting from this violation and no duty to give additional notice or exhaust any administrative remedies.

32. Despite this notice, Defendants Samples, Waller, Kloberdanz, Francis, City, Cazzell, Munn, Eyre, Schreiner, Roberts, and Unknown Conspirators continued this misconduct in violation of the Plaintiff's rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United State, continued depriving the Plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983.

33. Despite this notice, Defendants Samples, Waller, Kloberdanz, Francis, City, Cazzell, Munn, Eyre, Schreiner, Roberts, and Unknown Conspirators continued this misconduct in violation of the Plaintiff's rights to Free Speech and Religious Freedom Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983.

34. Kloberdanz, Cazzell, Munn, Eyre, Schreiner, Francis, City, and Unknown Conspirators chose to commit more violations including the unlawful termination of Plaintiff's freedom to go and enjoy the benefits and services of public APS property in retaliation

for the Plaintiff's earlier notice that Kloberdanz, Roberts, and Munn were violating the Plaintiff's rights to not be defamed or treated unfairly due to her race, sex, and/or color.

35. The City ignored the noticed misconduct and the resulting financial liability.

36. This misconduct through imprisonment, time, energy, travel to and from court, and extreme emotional distress caused and/or contributed to Plaintiff's depression, anxiety, fear, all of which results in Plaintiff repeatedly being kept from earning salary, wage and independent contractor income, enjoying life, being free. Defendants' conduct caused and contributed to damaged relationships and reputational harm.

37. In fact, Plaintiff as a "stakeholder" in APS and member of the public, has been invited to address the BOE in person (**Exhibit A**). In fact, Plaintiff was invited to attend and address the APS Board on February 16, 2021 by a person with authority, Claudia Paz-Blossick who is the Assistant to the [APS] Board of Education on February 08, 2021 (**Exhibit B p.2**). Plaintiff provided her intent of addressing the APS Board of Education along with other members of her coalition, BAEE at Rise-Colorado, who is looking to end the disproportionate discipline of Black students in APS (**Exhibit B p.1**). Upon arrival, Plaintiff was denied equal enjoyment of addressing the school board in person, for what was told to Plaintiff and other witnesses as nothing more than, "they don't want you here." In fact, APS states, ""… parent" also includes guardians and other members of a student's family involved in the student's education." (**Exhibit C p.1**). As Plaintiff has family members who attend APS schools, in addition to Plaintiff being a member of the Aurora community, Plaintiff held a privileged right to be upon APS property to address the APS BOE. Finally, as the City is void of any evidence that Plaintiff's conduct at anytime on any APS property has warranted depriving Plaintiff of the right to participate,

as all other community members, in perpetuity contradicts common understanding. The absence of this evidence substantiates the denial proffered by Caplan and Ernest was done for reasons not contemplated under the ordinance, as APS seeks to prohibit the conduct outlined in APS Policy KFA-R Public Conduct on District Property, **(Exhibit D pp. 1-3);** thereby, according to the dismissal, (Exhibit E), Plaintiff was privileged to enter, remain, and refuse to leave said property.

38. As is the case here, Plaintiff claims a right to the APS public property to address the APS Board of Education, making this court the improper venue to resolve the dispute before the court. In Jennings v. Shuman, 567 F.2d 1213, 1220 (3rd Cir. 1977), the court stated that "abuse of process is by definition a denial of procedural due process." Under the circumstances of this case, the above quote is particularly relevant. Plaintiff has a right to equal enjoyment as all other citizens, which would include access to enjoy Plaintiff's rights to address the Board of Education in person upon APS property. As Plaintiff has been upon APS property for the last 30 years, Zoom is not a replacement for in person access. The most recent dismissal of the most recent charge of trespass against Plaintiff on May 12, 2021, by the City of Aurora District Attorney for lack of evidence – after Plaintiff's Motion to Dismiss (*Id*. E) - affirms Plaintiff's ability to be upon APS property to address the school board in person. It is an abuse of process when a legal procedure is perverted to accomplish an ulterior purpose for which it was not designed. See Prosser, Law of Torts (4th Ed.), page 856 (1971). See also, *Tappen v. Ager*, 599 F.2d 376 (10th Cir. 1979).

39. The fact is that prior to the discriminatory suspension of Plaintiff's daughter by White APS Assistant Principal Janelle Kirkley on May 02, 2018, Complaint had no record of

trespass or issues with APS. Post discriminatory suspension of Plaintiff's daughter and the disparate retaliatory original trespass issued to Plaintiff in May 2018, which were both rescinded *(Id.* **M),** APS, Munn, Cazzell, Francis, Eyre, and Schreiner have trespassed or sought to trespass Plaintiff seven times. Six of the Seven **(Exhibit G pp. 10-11),** including the most recent one, were either denied or dismissed *(Id.* **E)**. The fact that Plaintiff was found guilty of trespass in 2019, which was under the exact same conditions of the previous attempts - and the most recent attempt - substantiates the illegitimacy of the charges and conviction. Furthermore, as an African-American, Plaintiff is much more likely to be wrongly convicted of a crime. As many as 100 million U.S. adults – or nearly one-third of the population – have a criminal record of some sort[3]. Minorities like the Plaintiff are disproportionately charged and convicted of crimes in the United States[4]. Even while Plaintiff was found guilty one of APS', Munn's, Cazzell's, Francis', Eyre's and Schreiner's seven attempts to deprive Plaintiff of her Rights – even while all were based on the same conduct, at the same address – Plaintiff's subsequent activity on APS property on February 16, 2021 was justified as an Aurora, Colorado City Attorney said APS lacked the evidence to prove Plaintiff's guilt nor the authority of the August 24, 2018 No Trespass Directive to deprive Plaintiff of equal enjoyment. Whilst this and the others were dismissed, Plaintiff still was unable to address the school board in person or online on February 16, 2021, as a result of APS', Munn's, Cazzell's, Francis', Eyre's and Schreiner's conduct. Plaintiff will never be allowed to address the BOE on February 16, 2021.

40. It was through another subsequently dismissed criminal charge of trespass where Plaintiff learned she was not alone in having been trespassed from APS properties by APD. In

2018, while the Plaintiff was the only person trespassed from APS administrative offices, she was not the only person trespassed as subpoenaed report shows there were over 70 people trespassed from APS property by APD **(Exhibit J).** About 90% of the names of the individuals trespassed have ethnic or minority sounding names. In fact, a sampling of the individuals trespassed in 2018, shows the disparate treatment African Americans or Blacks are experiencing in APS. Narrowing the data to the similar time period of 2018 when Plaintiff was first issued the No Trespass Directive the disparate conduct of APS is evident. While Blacks or African Americans made up only "18.4%[5]" of the APS population and only "16%[6]" of the Aurora, Colorado population in 2018, evidence retrieved from Aurora Municipal court records shows the likelihood[7] Blacks or African Americans make up over 40% **(Id. J)** of those trespassed from APS properties in 2018; substantiating the disparate treatment of Blacks or African Americans or the Plaintiff in APS.

---

[3] Bureau of Justice Statistics, U.S. Dep't of Justice, Survey of State Criminal History Information Systems, 2012, 3 (Jan. 2014), available at https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.
[4] https://www.sentencingproject.org/publications/un-report-on-racial-disparities/
[5] https://accountability.aurorak12.org/wp-content/uploads/sites/203/2019/01/District-Enrollment-and-Demographics-2018-19.pdf
[6] https://www.auroragov.org/cms/One.aspx?portalId=16242704&pageId=16394086
[7] Plaintiff diligently sought the summons and complaints which would show the race of individuals who were shown to be trespassed from APS properties in response to a subpoena Plaintiff issued. Plaintiff has been denied access to all records through seemingly intently incorrect information and slothful actions, as well as because some of the records concern minors. While Plaintiff understands the sensitive nature of minor criminal records, Plaintiff simply seeks the race which is noted on all summons and complaints. Plaintiff was denied (Exhibit N) the ability to see the race of 20 of the 23 sample cases from the more than 70 in 2018. It is no coincidence that of the nine files provided 55% of them was a person was like Plaintiff, Black or African American (Id. N). Laws concerning privacy were not intended to

provide protection or complicity in the willfully deprivation of the rights of citizens. The Division has an obligation to investigate and eradicate these disparities.

41. The PS affirms the person entrusted to provide public access to public meetings was never made aware of the No Trespass Directive. If a person is not permitted to be upon school property, everyone who allows access should be aware. The fact that this was not communicated, even after the conviction, substantiates the No Trespass Directive as arbitrary. APS, Munn, Cazzell, Francis, Eyre, and Schreiner has no evidence that corroborates Plaintiff's behavior has ever been disruptive or harassing or threatening. Plaintiff has evidence that APS', Munn's, Cazzell's, Francis', Eyre's and Schreiner's conduct has consistently been contradictive to their own policies, which only substantiates the discriminatory and retaliatory conduct.

42. In fact, it was not the No Trespass Directive as to why Plaintiff was denied equal access to address the BOE on February 16, 2021. It was per the request of Superintendent Rico Munn as to why Plaintiff was denied equal access **(Exhibit F).** If the No Trespass Directive was just cause to deprive Plaintiff equal enjoyment, then the Superintendent would not have had to "ask" *Id.,* for Plaintiff to not be allowed. Why the Superintendent would not want Plaintiff to address the BOE in person on ending the Disportionate discipline of Black students in APS, is unknown to Plaintiff, is not addressed in the PS, and only substantiates the collusion and oppressive nature of the deprivation of Plaintiff's Rights.

43. APS alike every other American public school district has since de-segregation in the 1960's disparately treated its Black or African American students[8]. This disparate

treatment has caused what is commonly referred to The School to Prison Pipeline[9]. When looking at Black girls in public education, Black girls are "Pushed Out[10]" of the education system; Black girls like the Plaintiff's daughter and the Plaintiff herself as alleged herein.

44. APS calling the police upon the Black female citizen Plaintiff created a dangerous condition in the public facility used for recreation, waiving immunity.

45. Defendants' conduct deprived Plaintiff from filing her complaint earlier directly through the frivolous trespasses which caused meritless warrants which caused Plaintiff's imprisonment, court dates, trips to and from the courthouse, phone calls, emails, and squandering Plaintiff's precious limited financial, mental, and physical resources. The extraordinary circumstances of the COVID-19 pandemic and Plaintiff's own COVID-19 infection which caused her to be hospitalized and currently suffering from Long-COVID, also impeded Plaintiff's ability to file earlier.

---

[8] https://www.apsva.us/wp-content/uploads/2021/02/Suspension-Data-2019-20.pdf; https://www.apsva.us/statistics/suspension-data/
[9] https://co.chalkbeat.org/2021/3/12/22328371/colorado-racial-disparities-discipline-bill-school-to-prison-pipeline#:~:text=Colorado%20school%20districts%20would%20have,handcuffs%20on%20elementary%20school%20students
[10] https://pushoutfilm.com/; http://schottfoundation.org/resources/black-girls-matter-pushed-out-overpoliced-and-underprotected

## Claims for Relief

46.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference.

47. At all relevant times Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis were acting under the color of law when depriving Plaintiff of her rights.

48. Plaintiff makes the following averments in support of allegations the defendants violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 2000a:

49. the Civil Rights Act "is to be afforded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of racial discrimination." United States v. Beach Assocs., Inc. , 286 F.Supp. 801, 808–09 (D.Md.1968). Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc., 175 F.Supp.3d 1290 (D. Colo. 2016).

50. Defendants calling or causing another to call the police upon the Black female citizen created a dangerous condition in the public facility used for recreation, waiving immunity. Defendants' conduct further deprived Plaintiff from filing her complaint earlier directly through the frivolous trespasses which caused meritless warrants which caused Plaintiff's imprisonment, court dates, trips to and from the courthouse, phone calls, emails, and squandering Plaintiff's precious limited financial, mental, and physical resources.

## COUNT 1

### Violations of 42 U.S.C. § 1981(a)

**Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis**

51. 42 U.S.C. § 1981(a) guarantees equal rights under the law to all persons within the jurisdiction of the United States with "the full and equal benefit of all laws and proceedings for the security of persons." *See 42 U.S.C. § 1981(a)*.  In *Hampton v. Dillard Dept. Stores, Inc*. , 247 F.3d 1091, 1102 (10th Cir.2001), the Tenth Circuit set forth the elements of a § 1981 claim as follows: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."

52. Plaintiff a Black woman is a member of protected classes and as a resident of Colorado, USA, Plaintiff is entitled to "the full and equal benefit of all laws and proceedings for the security of persons." *Id.* § 1981(a).

53. Roberts, Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, and Francis have every day since May 2018 denied Plaintiff of all laws for the security of [her] person while on or off APS property through the frivolous trespasses, warrants, resulting arrests, and imprisonment; additionally through the unjust removal of Plaintiff from the public property at the APS Board of Education meeting on February 16, 2021. Said violations deprived Plaintiff of laws, the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, the Colorado Constitution, and Colorado laws C.R.S. 24-34-601(2.5) and C.R.S. 24-34-601 (2)(a) without just cause due to Plaintiff's race. Roberts' motivation is race based as, similarly situated parents who were white were not trespassed from all APS properties as noted in documents from witnesses.

54. Other members of Plaintiff's Coalition and community members who wish to address the APS BOE in person on February 16, 2021, and On or about March 24, 2021, who were

allowed to address the APS BOE in person. Thus, Plaintiff's position is identical to the

comparators "in all relevant respects." *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th

Cir. 2018).

55. APD records reflect APS employees often conspire with APD to deny the rights of Black

and Brown citizens[11] at a disproportionate rate. At the time of the denial, Samples,

Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner,

and Francis were acting under the color of law.

56. Kloberdanz deprived the Plaintiff's civil rights in collusion with Waller, Samples,

Cazzell, and/or APS Security in by speaking and determining with Cazzell and Officers

Plaintiff would be denied the aforementioned rights through the known rescinded

catalytic unlawfully executed denial of equal access to public property, public

accommodation, and the APS BOE on the basis of Plaintiff's race, color, sex, and/or in

retaliation for her active exercise of her freedom of speech, due process, and free exercise

of her religious freedoms. Kloberdanz's plight to deprive Plaintiff's civil rights occurred

not only on February 16, 2021, May 07, 2018, but also on July 12, 2018 when

Kloberdanz escalated and patronized Plaintiff when multiple APS employees refused

Plaintiff's right to publicly inspect APS files pursuant to APS policy GBJ in collusion

with Cazzell, Schreiner, and/or Francis, as the responding APD Sargent declined

Kloberdanz's, Cazzell's and other APS Security requests to not only trespass, but arrest

Plaintiff.

57. Munn by virtue of his own conduct and state of mind also violated the Constitutional

Rights of the Plaintiff, through collusion as evident in Munn emailing Defendant Eyre on

or about February 10, 2021 asking for Plaintiff to be denied equal access and

participation in addressing the APS BOE in person as all other similarly situated members of the public on February 16, 2021.

58. Not only has APS', Munn's, Cazzell's, Francis', Eyre's and Schreiner's conduct impeded upon Plaintiff's Fourteenth Amendment Rights to address the APS BOE in person, but also her First Amendment Rights, the public entity allows its employees to discriminately prohibit constitutionality protected conduct while on APS property. See *Zwickler v. Koota*, 389 U.S. 241, 249-250 (1967), and cases cited. Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public.' *Haguse v. CIO* 307U.S. 496, 515 (1939)." *Kunz v. New York*, 340 U.S. 290, 293 (1951). See also *Shuttlesworth v. Birmingham*, 394 U.S. 147, 152 (1969). The right to use a public place for expressive activity may be restricted only for weighty reasons. The U.S. Supreme Court held that free expression could not be barred from the school campus and "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker V. Des Moines School District*, 393 U.S. 503, 508-509 (1969). Expressive conduct on school property is only limited where the conduct "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Id.,* at 513. Here Plaintiff's seeking to address the APS Board of Education in person is protected because Plaintiff "neither interrupted school activities nor sought to intrude in the school affairs or the lives of others." *Id.,* at 514.

59. *Givhan v. Western Line Cons. Sch. Dist*., 439 U.S.C 410 (1979) ("…the District Court held the violation of the petitioner's First Amendment rights.") We conclude that the primary reason for the trespass order was the parent Plaintiff's criticism of the Roberts,

Munn, Eyre, Cazzell, and Kloberdanz's practices and policies; leading the Plaintiff to believe said actions are racially discriminatory.

60. Based on the forgoing Defendants have deprived Plaintiff of the full and equal benefit of all Colorado laws and the property of her free speech in person at APS BOE meetings in violation of 42 U.S.C. § 1981(a).

61. Said impairments were conducted by actors operating under color of State law in violation of 42 U.S.C. § 1981(c).

62. As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

63. **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 1981 Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $40,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $10,000,000, plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney, and such other relief deemed to be just and equitable.

---

[11] Through Subpoena received, Plaintiff has names of over 300 people trespassed from APS properties from 2014-2019. The names sound like Black and Brown names.

## COUNT 2

### Violations of 42 U.S.C. § 1985

**Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators,
Cazzell, Munn, Eyre, Schreiner, and Francis**

64. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must show the following: (1) a
    conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or
    class of persons of the equal protection of laws, or of equal privileges and immunities
    under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either
    injured in his person or property or deprived of any right or privilege of a citizen of the
    United States. *Griffin v. Breckenridge* , 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338
    (1971).

65. At all relevant times Samples, Waller, Kloberdanz, Unknown APS Security Officer,
    Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis joined an ongoing
    Civil Rights Conspiracy while they were acting under the color of law when depriving
    Plaintiff of her rights.

66. Roberts, Kloberdanz, Unknown Conspirators, conspired together to and thus did deprive
    Plaintiff of free speech, due process, equal protections, and rights of personal security in
    violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the
    Colorado Constitution on May 07, 2018 when they worked together to issue the first
    trespass from all APS properties that was later rescinded by APS on May 17, 2018.
    Kloberdanz has conspired to violate Plaintiff's civil rights not only on February 16, 2021,
    with Cazzell, Eyre, and Francis to deny Plaintiff equal access to exercise her freedom of
    speech to address the APS BOE in person, but also on May 07, 2018, when Kloberdanz
    issued the later yet instill catalytic first No Trespass Directive from all APS properties
    unless Defendant Cari Roberts provided Plaintiff permission; substantiated by the

prolonged time from the Plaintiff's exit from Roberts' school to the issuance of the No Trespass Directive.

67. Defendants Munn, Eyre, Schreiner, Francis, and/or Cazzell conspired to and thus did deprive Plaintiff's rights afforded under the U.S. Constitution to deprive Plaintiff of free speech, due process, equal protections, and rights of personal security in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado Constitution with Eyre, Cazzell, and Schreiner on or about August 24, 2018 based on Schreiner's known false or should have been known to be false statements of Plaintiff, served a No Trespass Directive to Plaintiff for all APS properties in perpetuity requiring permission in perpetuity due to Plaintiff's race, color, sex, and/or in retaliation for her active exercising her rights. Substantiated as other than Plaintiff, no one in the last 10 years has ever received such notice without have made verified threats to the safety of people on and property APS itself.

68. The plain language of the ordinance affirms Plaintiff's right to be upon the premises noted in the Summons and Complaint, as 15771 E 1st Ave, Aurora, CO 80011 is a public building where the public can address the government body, Aurora Public Schools Board of Education. This building does not have a principal, nor a teacher, nor a staff member. It is a building used to host public and private meetings. As the building has neither a principal, teacher, or staff member, the only way the Plaintiff could be charged is if "a person entrusted with the authority to maintain and supervise the property, told [Plaintiff] not to enter or after being told to leave." Sec. 94-71.(4) - Trespass. As no person entrusted to maintain and secure the property told Plaintiff to leave, Plaintiff held a right as member of the public to be upon said public property to address the public

government body. This fact substantiated as the charge which prompted this complaint

with the Division was dismissed for lack of evidence by the City of Aurora. (Exhibit E).

Furthermore, Plaintiff was factually told not to enter by Caucasian Caplan and Ernest

staff member Elizabeth Francis, who is in Boulder, Colorado, who is not a APS teacher,

not a APS principal, APS staff member, or person who maintains and secures the

building; making the instruction to not enter or to leave by or based upon said instruction

by Elizabeth Francis, an abuse of discretion and authority; further substantiating the

discriminatory retaliatory conduct of APS, Munn, Cazzell, Francis, Eyre, and Schreiner

against Plaintiff.

69. Munn, Eyre, Schreiner, Francis, and/or Cazzell conspired to deprive Plaintiff of her rights
through:

   a. declining to follow appropriate legal action through a protective order or
      restraining order at anytime from July 2018- present day given the many charges
      of trespass that all have leveraged against Plaintiff; and

   b. declining to follow appropriate legal action of APS' adherence to APS policies
      concerning trespassing of parents or adults from all APS properties such as failing
      to inform at anytime -  given the many charges of trespass that all have leveraged
      against Plaintiff - persons responsible for permitting the public on APS properties
      which are open to the public; as Plaintiff was given permission to attend the
      public meeting in person on February 08, 2021 by the person advertised to be the
      person the public should contact to address the governing body.

70. Munn further colluded to deprive Plaintiff of free speech, due process, equal protections,
and rights of personal security in violation of the First, Fifth, and Fourteenth

Amendments of the U.S. Constitution due to Plaintiff's race, color, sex, and/or in

retaliation for engagement in protected activities and the Colorado Constitution with

Eyre, Francis, and Schreiner on or about August 24, 2018 when Plaintiff was served a No

Trespass Directive for all APS properties in perpetuity requiring permission in perpetuity

from Francis and/or Schreiner from Schreiner, (Add no trespass), and Plaintiff contacted

Munn about her rights through multiple communication channels, and Munn failed to act

based on known or should have been known untruthful and/or unvalidated statements.

The conspiracy is further evident in that Plaintiff went to APS Security Headquarters on

August 24, 2018 and no one was unable to validate the notice received hours earlier.

71. Based on emails, Francis also colluded with Cazzell, Munn, Eyre, and Schreiner on

and/or about February 16, 2021 as Francis communicated via phone and/or email with

Eyre on declining Plaintiff's rights to address the APS BOE in person as all other

members of the public based on the August 24, 2018 No Trespass Directive which was

known or should have been known to be incorrect based on known or should have been

known to be unsubstantiated information; due to Plaintiff's race, color, sex, and/or in

retaliation for her active exercising her rights, or her child's rights in violation of the

First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado

Constitution.

72. On or about March 24, 2021 Francis again declines Plaintiff's rights as Plaintiff expressly

asked Francis' permission to attend the March BOE meeting in person, which Francis

also denied without explanation when asked, also due to Plaintiff's race, color, sex,

and/or in retaliation for her active exercising her rights, or her child's rights in violation

of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado Constitution.

73. The collusion is further evident in the timeline of events and numerous trespass court cases that resulted in numerous dismissals:

74.     Aurora Public Schools commenced this year of torture against your Aurora citizens, by and through the catalytic suspension of my daughter on May 02, 2018.

75. On May 07, 2018, the all-Caucasian staff at Aurora Frontier K-8, including Janelle Kirkley, Asst Principal, and Cari Roberts, Principal, located off of Hampden and Himalaya in Aurora Colorado, walked out the meeting which was supposed to help my daughter, a four-year student whom never was previously suspended, to be successful at the school.

76.     On May 07, 2018 the all Caucasian staff in the office, lied about my actions, lied to APD officer Kristopher McDowell and trespassed me from all APS properties based on these lies; modern day lynching me, mad black woman-ing me, erroneously.

77.     On May 17, 2018, APS performs the rare action, and rescinds not only the catalytic suspension, but also the trespass, as both were deemed inappropriate. APS through Kathleen Shiverdecker promises to move my daughter to a safe school, where she is not bullied, not lied on by the principal or assistant principal, not unlawfully suspended, and where her single mother is free to participate in her education. Ms. Shiverdecker along with Munn, Cazzell, and Unknown Conspirators never makes good on this promise.

78.     On July 12, 2018, APS unlawfully denies Plaintiff's ability to publicly inspect
files in their custody. APD is called and declines APS's multiple requests to trespass me.
The second unsuccessful attempt to trespass from all APS facilities.

79.     On August 31, 2018, APS attempts to trespass me by calling APD Officer
Michelle Hanley and alleging another Aurora City Ordinance violation, issuing J242871;
originally attempted as a felony charge, absent cause. On November 19, 2018, per *pro se*
Plaintiff's motion to dismiss, this case is dismissed. **(Exhibit 2).**

80.     Suspiciously, allegedly on November 16, 2018, Officer Michelle Hanley is once
again dispatched to APS to take another report, which alleges Plaintiff trespassed on the
same APS property again on September 18, 2018, nearly 60 days prior to the report,
issuing J242854 under 94-71(4) a different alleged Aurora Municipal trespass ordinance
violation than J242871 94-71(8), yet are issued for the same property by the same
Officer. The warrant issued in this case, is expediently and questionably entered on
November 20, 2018; the day after the first trespass the same APD Officer entered,
J242871 was dismissed. **(Exhibit 3).**

81.     On February 12, 2019, APS calls APD again, to make a report of a third trespass
violation for 15701 E. 1st Ave, the same location for all failed trespasses; issuing
summon J224105 under the same trespass ordinance violation, which the first trespass
was dismissed 94-71(8).

82.     On February 27, 2019, Plaintiff was arrested for J242854 and J224015.

83.     On April 17, 2019, per *pro se* Plaintiff's motion to dismiss, J224105 is dismissed.

84.     On May 20, 2019, the original charge in case J242854 94-71(4), is dismissed,
making it the fourth failed trespass attempt for the public property in Aurora, the same

APS property, under the same accusations. **(Exhibit 3).** The City charges Plaintiff under 94-71(6)

85. k.      On October 30, 2019, Plaintiff was convicted of Trespass after a jury trial in J242854.

86. On February 16, 2021 Plaintiff is denied the ability to address the APS BOE in person like all other similarly situated stakeholders who asked and received permission to do so, as Plaintiff was arrested by Samples and Waller through the request of Munn to Eyre and Francis, all based on the No Trespass Directive issued by Schreiner on August 24, 2018. Plaintiff is charged with trespass again in J269543 under 94-71(4).

87. On May 12, 2021, per *pro se* Plaintiff's motion to dismiss, J269543 is dismissed. **(Exhibit 6).**

88. Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, and/or Francis conspired when Waller alleges in his report that Plaintiff "argued" yet on the body cameras Plaintiff is silent more than 75% of the time that was captured as some of the footage is missing and broken up as both Officers have knowledge the first 30 seconds has no sound and each Officer started and stopped recording three times when conducting alleged investigation. There was only an investigation into how all could support the deprivation of Plaintiff's clearly established rights, equal privileges, and immunities under the law addressing a public body in public on public property on March 24, 2021, February 16, 2021, and/or everyday since August 24, 2018 . Neither person named attempted to ask if Plaintiff held permission or why she believed she had a right to be there; an overt failure to serve and protect the Black citizen Plaintiff.

89. Munn conspires when he sends Brandon Eyre an email saying Munn did not want Plaintiff to attend the meeting in person. Eyre then involves Francis, Schreiner, and Cazzell in the conspiracy. Based on investigative emails, Francis advises Cazzell to prohibit Plaintiff's presence on APS property. Cazzell then informs APS security officers who then call APD officers.

90. APD records reflect APS employees often conspire with APD to deny the rights of Black and Brown citizens. At the time of the denial, Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, were acting under the color of law.

91. The failure of APS to hold its employees to multiple policies further substantiates the conspiracy between APS and its employees to deprive Plaintiff of her rights.

92. By virtue of his own conduct and state of mind Unknown APS Security Officer also violated the Constitutional Rights of the Plaintiff, through lying in wait at the door of the public building where the public can address the governing body for APS, the Board of Education ("BOE") at the public APS BOE meeting which was occurring on February 16, 2021 at said location where Plaintiff was denied entry and denied opportunity to be heard in person as all other similarly situated community members on February 16, 2021 due to Plaintiff's race, sex, color, and/or in retaliation for her previously and currently exercising her and/or her child's rights to free speech, due process, equal protections, and rights of personal security in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado Constitution and in collusion with Cazzell, Eyre, Kloberdanz, and/or Unknown APS Co-Conspirators as this Security Officer stated he was "informed" Plaintiff was not allowed to participate in the public meeting in-person,

denied Plaintiff's access to the meeting with Cazzell, Kloberdanz, Samples, Waller, Natasha, Francis, and Schreiner.

93. After asking and being denied **(Exhibit L)** pursuant to the No Trespass Directive, Munn, Cazzell, Francis, Eyre, and Schreiner ignored Plaintiff and not as APS, Munn, Cazzell, Francis, Eyre, and Schreiner avers in PS p.5 at 5, substantiating the material misrepresentations which substantiate the collusion between Defendants .

94. Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis' conduct deprived Plaintiff's constitutional right to equally exercise her liberties to address the APS BOE in person as well as to be free from racial discrimination, a right that is protected by 42 U.S.C. § 1985(3). *See Griffin*, 403 U.S. at 97, 91 S.Ct. 1790.

95. Samples, Waller, Roberts, City, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis did the above described violations of 42 U.S.C. § 1983 in furtherance of objectives to prevent advocacy that would threaten exposure of misconduct and unlawful actions of Samples, Waller, Roberts, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis.

96. Samples, Waller, Roberts, City, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis joined an ongoing Civil Rights Conspiracy and committed affirmative acts in furtherance of the conspiracy designed to discredit the Plaintiff.

97. The conduct described in the proceeding paragraphs describe retaliatory discrimination, denial of Equal Protection Under the Law, Free Speech, Free Exercise of Religion, by

Samples, Waller, Roberts, City, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis.

98. By and through the foregoing, Samples, Waller, Roberts, City, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis knowingly joined an ongoing Civil Rights conspiracy motivated by and with the objective of "racial or otherwise class-based invidious discriminatory animus".

99. Plaintiff was injured through the denial of her legitimate expectations of property, income, and opportunity. As a result of the unlawful conduct of Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, and Francis Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

100.    **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 1985(3) Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $40,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $10,000,000, plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney, and such other relief deemed to be just and equitable.


## COUNT 3

### Violations of 42 U.S.C. § 2000a

**Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis**

101.     42 U.S.C. § 2000a protects an individual's "full and equal enjoyment of the goods,

services, facilities, privileges, advantages, and accommodations of any place of public

accommodation ... without discrimination or segregation on the ground of race, color,

religion, or national origin." 42 U.S.C. § 2000a(a).

102.     APS property is a place of public accommodation as defined in 42 U.S.C. §

2000a(b)(3).

103.     APS BOE meetings occur using technology and tools manufactured outside the

State of Colorado, therefore the operations affect interstate commerce.

104.     The activities of APS are to support the State action of education children in safe

learning environments that are conducive to learning. APS hosts and sponsors events

from the Aurora Public School Foundation, which has national sponsors which were held

at the building. One could also conclude the property in question as a place of

entertainment as the events held here cause "someone's time to pass agreeably." *Daniel*

*v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969).

105.     APS is a place of public accommodation within the meaning of C.R.S. 24-34-

601(1). APS' Position Statement ("PS") admits in the very first paragraph, Plaintiff was

denied equal enjoyment of the goods, services, facilities, privileges, advantages of

addressing the Aurora Public Schools Board of Education in person on February 16,

2021.  APS states," Ms. Grays was provided remote access to the meeting via Zoom,"

**(PS p.1),** while all other members of the public, including members of the very same

coalition with which Plaintiff sought to address the BOE were allowed to address the

BOE in person. APS' first paragraph also affirms the denial of Plaintiff's ability to be

upon APS property was proceeded by, "(in 2018) multiple Charges of Discrimination

with the CCRD," *Id.,* just weeks before1 the No Trespass Directive was issued and is therefore in retaliation for said Charges. An issue left for determination through litigation is as to why Plaintiff was denied equal access to address the BOE in person, even after having received confirmation by the person entrusted by the district to confirm requests for public comment. **(Exhibit B p.2)**.

106.      1 The temporal proximity of Plaintiff's charges of discrimination inside and outside of APS, substantiates the retaliatory nature of the arbitrary and capricious No Trespass Directive issued by Caucasian Michael Schreiner an attorney in Boulder, Colorado, even when Plaintiff was not on APS property; via email, "along with a cease and desist for the law firm Caplan and Earnest [and their Caucasian staff]," **(PS p.1),** which substantiates the frivolous nature of the No Trespass Directive. The timeline of events are as follows:

1.      May 02, 2018 - Plaintiff's Daughter suspended for what was on the phone stated to be physical contact, Plaintiff immediately challenged the suspension based off the statement of Plaintiff's daughter. In addition to the paperwork that was sent home being noncompliant with APS policies and Colorado laws, the paperwork stated, "detrimental behavior." This the catalyst to all that follows, a catalyst which was later admitted by APS to be incorrect as it was rescinded.

2.      May 07, 2018 – Plaintiff is trespassed from all APS properties for the very first time in her 35 years of life and living in Aurora, Colorado and attending APS functions.

3.      May 17, 2018 – APS admits the suspension and trespass were done in err as APS rescinds **(Exhibit M)** the suspension of Plaintiff's daughter and the Plaintiff trespass from all APS properties.

4.    May 29, 2018 – Plaintiff files complaints of discrimination for her daughter and
      herself with APS employee designated to investigate APS discrimination against
      students and members of the public in APS, Marcelina Rivera.

5.    Jun 29, 2018 – Plaintiff files the first charges of discrimination against APS, Munn,
      Cazzell, Francis, Eyre, and Schreiner APS for herself (CP2018327276) and Plaintiff's
      daughter (CP2018160052).

6.    July 11, 2018 – Plaintiff files a lawsuit seeking to compel APS to educate Plaintiff's
      daughter in a safe learning enviroment in Arapahoe County District Court case 2018-
      cv-00178.

7.    July 12, 2018 – Plaintiff seeks to inspect public files per APS policy GBJ, only to be
      unlawfully denied. Plaintiff and APS call Aurora Police Department. APS requested
      APD trespass and arrest **Plaintiff (Exhibit H).** Responding APD Sergeant declines
      APS second request to trespass Plaintiff. Responding APD Sergeant orders APS to
      provide a date within 3 days of when the public files will be made available. Once
      Plaintiff is provided the date by APS, Plaintiff leaves unarrested and not trespassed.

8.    August 24, 2018 (~ 12:30) – Plaintiff arrives at Caplan and Earnest to deliver copies
      of motions and exhibits Plaintiff had to serve regarding case 2018-cv-00178. Upon
      arrival the Plaintiff is forced to contend with the White receptionist's intentional
      ignorance as to how to accept motions and exhibits, asking Plaintiff multiple times if
      they were "garnishments." Upon Plaintiff asking for a manager, the office manager
      harshly tells Plaintiff she is not permitted to personally serve motions and exhibits.
      Plaintiff confirmed her intent and the issue of the receptionist's ignorance. Plaintiff
      left the motions and exhibits.

9.  August 24, 2018 (15:07) – Plaintiff receives the third attempt of APS to trespass her from all APS properties citing her conduct since May 2018 and on July 12, 2018 **(Exhibit I),** even after APS rescinded the original trespass in May 2018 *(Id.* **M)** and the APD Sergeant denied APS's multiple requests to trespass and arrest Plaintiff on July 12, 2018 *(Id.* **H);** ten weeks after alleged conduct warranted trespassing.

10. August 24, 2018 (17:07) – Plaintiff arrives at APS security headquarters, speaks with the director of security Mitzi Torres who is unable to confirm the No Trespass Directive sent 2 hours prior to Plaintiff's arrival. *Id.* **I.**

**11.** August 24, 2018 (17:17) – Plaintiff leaves APS security headquarters without being arrested or provided an APS trespass notice and only with Ms. Torres' and her boss the director for APS security's business cards. Plaintiff sends an email to APS legal counsel advising of what had just occurred asking for clarification as to why Plaintiff was being trespassed weeks and months after alleged conduct permitted such an action. No response was ever received by APS legal counsel or security or superintendent. *Id.* **I.**

107. Plaintiff's communications with APS and/or APS's legal counsel was an exercise of her rights to request answers, access, and accountability from the governmental entity as to those who caused and/or contributed to the deprivation of the dark-skinned female Aurora, Native Plaintiff and Plaintiff's daughter's rights based on race, color, and religion. Everyday since August 24, 2018 Plaintiff has been unlawfully deprived of equal enjoyment and access to any or all APS properties surmounting to more than 730 violations by Defendants. Plaintiff also believes that she is free in the name of Jesus Christ and man has not the ability to restrict Plaintiff free exercise claiming her birthright

promised as a Child of God. Every day that passes without her freedom restored even as this litigation progresses, Plaintiff is further and further damaged. Samples, Waller, Schreiner, and Francis are unaffiliated with the place of public accommodation when perpetuating the deprivation of Plaintiff's rights.

108.    As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

109.    **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 2000a Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $40,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $10,000,000, plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney, and such other relief deemed to be just and equitable.

## COUNT 4

### Violations of 42 U.S.C. § 1983

**The City, Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, APS, and Francis**

110.    As identified in this Complaint, since the first trespass issued by Kloberdanz and Roberts on May 07, 2018 and since Schreiner issued the subsequent No Trespass Directive to Plaintiff on August 24, 2018, Plaintiff has been denied the public property of

APS by and while Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis were acting under color of law.

111.     The reason for the trespasses given by Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis while acting under color of law was pretext for the mistreatment of Plaintiff due to her race, sex, color, and/or in retaliation for engagement in protected activities.

112.     The trespasses deprived Plaintiff of the rights, privileges secured by the U. S. Constitution to petition the government for redress, freedom of speech, freedom to address the governing body of Aurora Public Schools in person, secure person and property, equal protections, and justice for all.

113.     Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, and Francis' conduct since March 2018, on or about February 16, 2021, and on or about March 24, 2021, violated the Free Exercise Clause of the First Amendment in that Defendants' conduct pursuant to the Ordinance infringes on the Plaintiff's absolute right to hold any religious belief, that she is free to be upon public property and can speak her truth freely in the name of Jesus Christ which may not be interfered with by the government.

114.     Samples, Waller, Kloberdanz, Unknown APS Security Officer, Cazzell, Munn, Eyre, Schreiner, and Francis were all individually made aware of the multiple dismissals of the charge of trespass against Plaintiff that was imposed by The City *(See* ¶¶78-87 supra.) and failed to retract the August 24, 2018 directive or take any action within their purview to restore Plaintiff's freedoms on public property, free speech, exercise of her

religious and due process rights, intently and retaliatory based on the Plaintiff's race, color, sex, and/or participation in protected activities.

115.　　Defendants' No Trespass Directive is a policy created by Schreiner and Francis on or about August 24, 2018, with responsibility for said the continued operation of the Directive lying with Samples, Waller, City, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis for said Directive every day post issuance,  as evident in the evidence attached to this Complaint; which resulted in the deprivation of Plaintiff's freedom of speech, free exercise of her religion, equal protections, public accommodation, and due process as each Defendant has personal knowledge the circumstances do not substantiate the Directive. Cazzell, Munn, Eyre, Schreiner, and Francis are policymakers concerning the Directive as each has to the power to rescind the Directive. Not one person has taken appropriate action to ensure Plaintiff's constitutional rights having direct knowledge of the deprivation.

116.　　As an Aurora, Colorado native and long-term taxpayer, Plaintiff has a legitimate claim of entitlement to APS property.

117.　　Defendants Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis are void of a legitimate goal in the Directive.

118.　　The City is liable as 94-71(4) of Aurora Municipal Code is a policy created by Defendant with deliberate indifference that it's silence on causation would be used to deny Aurora citizens their freedom of speech, free exercise of her religion, equal protections, public accommodation, and due process, on APS properties; all that Plaintiff has been deprived as a result of 94-71(4).

119.     By and through the multiple dismissal of APS' trespass charges against the

Plaintiff, the City had both actual and constructive notice that its policy 94-71(4) was

substantially resulting in violations of Plaintiff's constitutional guarantees, and the City

consciously and/or deliberately disregarded the risk of harm to Plaintiff. Plaintiff has

been denied substantive due process in her fundamental rights of freedom of speech, free

exercise of her religion, equal protections, and public accommodation, on all APS

properties.

120.     Documents obtained from the City also support Ordinance 94-71(4) has not been

changed since before 1960, a time of de-segregation; a time where Whites wanted to

simply be able to tell Blacks to leave public school property, without any causation

substantially certain the ordinance would result in constitutional violations.

121.     Based on court records, the City issues trespasses on APS properties at a

disproportionate rate to people of color, Blacks like the Plaintiff. Thereby Blacks are not

equally protected under the ordinance as Whites in the City, as Blacks are more likely to

be trespassed by the City on APS property than Whites.

122.     As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of

income, emotional distress, loss of housing, physical injuries, mental anguish including

humiliation and fear.

123.     **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of

freedom and retaliation for 42 U.S.C. § 1983 Protected Advocacy against all the

Defendants jointly and severally, for actual, general, special, compensatory damages in

the amount of $40,000,000 and further demands judgment against each of said

Defendants, jointly and severally, for punitive damages in the amount of $10,000,000,

plus the costs of this action, including attorney's fees should the plaintiff obtain an

attorney, and such other relief deemed to be just and equitable.


## COUNT 5

**Sec. 94-71(a)(4) Aurora, CO Code of Ordinances Violates the U.S. Constitution by Depriving Plaintiff of Procedural Due Process Making Condemnation Appropriate**

**Samples, Waller, Kloberdanz, The City**

124.     Sec. 94-71(a)(4) Aurora, CO Code of Ordinances, states in relevant parts,

125.     "It shall be a criminal violation of this Code to commit trespass in the City. A

person

126.     commits trespass if that person:

   a.   "Enters upon or refuses to leave the property of any parochial school, private

        school, or public school district where such property is used for the education of

        persons, after being told not to enter or after being told to leave by the principal,

        teacher, staff member, or by any person entrusted with the authority to maintain

        and supervise the property."

127.     "It shall be an affirmative defense to charges under subsections (a)(1) through (5)

and (7) of this section that the Plaintiff is licensed, invited by a person with authority, or

otherwise privileged to so enter, remain, or refuse to leave." Sec. 94-71(a)(4) Aurora, CO

Code of Ordinances.

128.     Ordinance 94-71 uses concepts that are so ill-defined as to invite the risk of

arbitrary and discriminatory enforcement by APD and APS in violation of the

Substantive Due Process Clause. The challenged portion, "after being told not to enter or

after being told to leave by the principal, teacher, staff member, or by any person

entrusted with the authority to maintain and supervise the property," fails to provide any

proscribed conduct which permits "the principal, teacher, staff member, or by any person

entrusted with the authority to maintain and supervise the property," to tell a person to

leave.

129.    Plaintiff also challenges the application of this ordinance to the location where the

governmental entity holds public meetings is not considered a ", property used for the

education of persons." *Id.* The Ordinance violated the constitutionally protected activity

of Ms. Grays address the APS BOE on February 6, 2021, March 2021, and addressing the

BOE in person on said dates.

130.    Ordinance 94-71a(4) impermissibly denies Plaintiff's free speech on APS public

property is a cognizable challenge to the Accommodation Clause. Plaintiff's free speech

in addressing the APS BOE is itself expressive conduct entitled to constitutional

protection. As a general rule, the government is prohibited from regulating speech based

upon its content or the particular message it conveys. Such content-based restrictions are

presumptively unconstitutional, and the government bears the burden of showing that

they are narrowly-tailored to serve compelling governmental interests. *National Institute*

*of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018); *R.A.V. v. City of*

*St. Paul*, 505 U.S. 377, 382-83 (1992). Here the government is void of impartial evidence

which substantiates any compelling governmental interest to deny the Aurora, Colorado

APS alum citizen Plaintiff the right to address the APS BOE in person as all other

similarly situated citizens enjoy. Ordinance 94-71a(4) "imposes a selective restriction on

expressive conduct far 'greater than is essential to the furtherance of [a substantial

governmental] interest.'" *Police Dep't of Chicago v. Moseley*, 408 U.S. 92, 102 (1972).

131.     The ordinance is impermissibly vague and should be "condemned" *Grayned v.

City of Rockford*, 92 S.Ct. 2294 (1972), as it is a, "broadly worded licensing ordinance

which grant[s] such standardless discretion to public officials that they are free to censor

ideas and enforce their own person preference." *Id*. "Second, if arbitrary and

discriminatory enforcement is to be prevented, laws must provide explicit standards for

those who apply them." *Edwards v. South Carolina*, 372 U.S. 229, 236 (1963). The

ordinance is void of any proscribed conduct, which gives both APD and APS too broad

discretion in determining the public's conduct which would invalidate any enforcement

through said city ordinance. *Shuttleworth v. Birmingham*, 394 U.S. 147(1969); *Staub v.

City of Baxley*, 355 U.S. 313 (1958); *Saia v. New York*, 334 U.S. 58 (1948); *Schneider v.

State*, 308 U.S. 147, 163-164 (1939); *Lovell v. Griffin*, 303 U.S. 444 (1938); *Hague v.

CIO*, 307 U.S. 496 (1939). The ordinance was specifically enacted in response to and

with the purpose of frustrating anyone's religious free exercise any staff in APS deemed

worthy of such oppression and is therefore not neutral. The general applicability of the

ordinance is also deniable as the creation and last changes to the ordinance occurred

during Jim Crow, at a time when the persons in charge of the ordinance were all

Caucasian. and the ordinance's language is void of any regulatory statements that narrow

the use of the ordinance to avoid discrimination based on race, color, sex, and/or in

retaliation for engagement in protected activities. Indeed, states have a paramount interest

in protecting historically-disfavored groups from discrimination in the provision of public

services. See e.g. *R.A.V.*, 505 U.S. at 395 (stating that "we do not doubt" that the state

interests in "ensur[ing] the basic human rights of members of groups that have historically been subjected to discrimination . . . are compelling"); *Board of Directors of Rotary Intl. v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (recognizing compelling state interest in "eliminating discrimination against women").

132.     The fact that the No Trespass Directive in August 2018 was used to jeopardize the Plaintiff as an African American, simply by just calling the police on Plaintiff in February 2021 - when Plaintiff had not only sought and received permission, but when Plaintiff had stated her intent and not interrupted any official proceedings happening in the building; even while awaiting for four APD officers and being arrested and humiliated in front of numerous individuals Plaintiff did not interrupt proceedings or damage property – was subsequently dismissed in May 2021, *Id.* **E**, establishes not only the frivolous nature of the No Trespass Directive issued three years prior, but substantiates the discriminatory conduct of denying Plaintiff equal access and enjoyment for reasons which the City of Aurora does not believe warrants trespassing.

133.     The No Trespass Directive is not only unconstitutional as it deprives Plaintiff's rights indefinitely on the uncommunicated subjectivity of the permission of White lawyers in Boulder, Colorado, but unlawful as a lawyer is not a permitted person to deny access under Aurora Codes. As a general rule, the government is prohibited from regulating speech based upon its content or the particular message it conveys. Such content-based restrictions are presumptively unconstitutional, and the government bears the burden of showing that they are narrowly-tailored to serve compelling governmental interests. *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018); *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382-83 (1992). *303 Creative LLC*

*v. Elenis* (D. Colo. 2019). In this case, APS, Munn, Cazzell, Francis, Eyre, and Schreiner is void of any compelling interest to decline to hear Plaintiff in person. Even when being trespassed, Plaintiff did not interrupt proceedings, damage property, or make any threats.

134.     The No Trespass Directive issued is unconstitutional as it perpetually precludes Plaintiff from being on any APS property thinly supported by two alleged points of substantiation: "since May 2018," Id. And "on July 12, 2018." *Id.*

135.     The Directive was issued arbitrarily without an appropriate level of process or procedural safeguards, as APS Security Headquarters was unable to validate it.

136.     The Ordinance also violates Procedural Due Process as Plaintiff was not given an opportunity to be heard and a decision was not made by a neutral decisionmaker prior to APS denying Plaintiff's right to address the APS BOE in person. The decisionmakers, Cazzell, Munn, Francis, Eyre, and Schreiner are not neutral. The City Attorney for Aurora affirmed the denial of Ms. Grays to address the APS BOE was unlawful and the City dismissed the charge, for the fourth time.

137.     By and through the foregoing, Plaintiff prays this Court will Condemn Sec. 94-71(a)(4) Aurora, CO Code of Ordinances and restore Plaintiff's reputation overturning the one conviction of trespass on Plaintiff's record and direct Defendant's to request the removal from Plaintiff's criminal history forthwith.

## **COUNT 6**

**The No Trespass Directive Deprives Plaintiff of Substantive Due Process Allowing the Court to Declare Plaintiff Free from the Directive**

**Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis**

138.     As indicated in the multiple dismissals of the charge of trespass against the

Plaintiff pursuant to the Directive, violates Substantive Due Process as APS is void of

any evidence other than statements from APS employees, Defendants, that Plaintiff's

conduct at anytime met the threshold for trespass from one let alone the more harsh

sentence of trespass from all APS properties.

## **COUNT 7**

### **Violations of Colorado Constitution**

### **Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis**

139.     C.R.S. 24-34-601 (2)(a) "It is a discriminatory practice and unlawful for a person,

directly or indirectly, to refuse, withhold from, or deny to an individual or a group,

because of disability, race, creed, color, sex, sexual orientation, marital status, national

origin, or ancestry, the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of a place of public accommodation or,

directly or indirectly, to publish, circulate, issue, display, post, or mail any written,

electronic, or printed communication, notice, or advertisement that indicates that the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of a place of public accommodation will be refused, withheld from, or

denied an individual or that an individual's patronage or presence at a place of public

accommodation is unwelcome, objectionable, unacceptable, or undesirable because of

disability, race, creed, color, sex, sexual orientation, marital status, national origin, or

ancestry.

140.      C.R.S. 24-34-601(2.5) It is a discriminatory practice and unlawful for any person

to discriminate against any individual or group because such person or group has opposed

any practice made a discriminatory practice by this part 6 or because such person or

group has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing conducted pursuant to this part 6.

141.      By and through all paragraphs in this Complaint, Defendants directly or indirectly

through the Directive refused, withheld, and denied Plaintiff the full and equal enjoyment

of the goods, services, facilities, privileges, advantages, or accommodations of a APS

properties which are places of public accommodation because of Plaintiff's race, color,

sex, and/or disability from August 25, 2018 through today.

142.      By and through all paragraphs in this Complaint, Defendants' aforementioned

discrimination of Plaintiff is also in part due to Plaintiff's charges of discrimination.

143.      As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of

income, emotional distress, loss of housing, physical injuries, mental anguish including

humiliation and fear.

## **COUNT 8**

### **Defamation**

### **Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis**

144.      Based on the actions of Schreiner and Francis in deciding to issue the No Trespass

Directive with or without the knowledge and permission of Kloberdanz, Unknown APS

Security Officer, Unknown Conspirators, Cazzell, Munn, and Eyre, is considered an act

which trespasses upon the fiduciary duty as attorneys Schreiner and Francis owe its alleged clients; therefore Schreiner and Francis are considered employees of the governmental entity APS and therefore are also a Public Person as all other APS employees.

145.     Defendants published and/or caused to be published statements that Plaintiff's conduct has warranted trespassing from all APS properties for eternity; that Plaintiff has made threats to their person or property or other APS employees

146.     Defendants made said statements with the knowledge they were void of factual evidence which supports the eternal denial of public accommodation, the statements were false, and were done in retaliation for Plaintiff's participation in protected activities which does not constitute cause to throw Plaintiff off of her neighborhood property as all others in Aurora who have engaged in similar expressive conduct.

147.     Defendants made the statements with a reckless disregard to the legitimacy of the statements, as all heard of the multiple dismissal of charges by the City of Aurora, therefore establishing each Defendant knew the statements were probably false or had serious doubts to their truth.

148.     Each and every Defendant is also one or more, readers, listeners, viewers, and/or recipients of the publication and each understood the statement to be defamatory, in addition to over 20 other current or former APS employees, current or former Caplan & Ernest employees, current or former City of Aurora employees, current or former Rise Colorado employees;

149.    Said statements caused the Plaintiff, *inter alia*, financial losses, physical harm, severe emotional distress, and special damages as Plaintiff's monetary losses will continue in perpetuity and are a result of injuries to Plaintiff's reputation and feelings.

150.    Each time Plaintiff was trespassed counts a repetition repeated by a third party, all of which began with Roberts and Kloberdanz's known false original trespass notice which was later rescinded.

## COUNT 9

### Breach of Fiduciary Duty

### Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis

151.    Aurora Municipal Code 94-71 invests a legal authority of the above persons to act for the benefit of Plaintiff's children and all other children within its public school system by ensuring persons without business or seeking to do harm do not succeed.

152.    Defendants Samples and Waller were acting as a fiduciary of the Plaintiff with respect to serve and protecting her property, person, while all Defendants held a duty to protect Plaintiff's Constitutional Rights as described herein.

153.    By and through the conduct as alleged in or in relation to the conduct described in every paragraph and Count in this Complaint, Plaintiff has established Defendants have breached their duties as described to the Plaintiff.

154.    Defendants did so recklessly and/or willfully.

155.    Defendants' conduct caused and continues to cause the Plaintiff to suffer damages, injuries, and losses as herein.

## COUNT 10

### Breach of Contract – Promissory Estoppel

### Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis

156.     APS website has since Plaintiff enrolled her children been full of promises to the Plaintiff that her child would "succeed" in APS, that children and parents have rights, including that it does not discriminate on the basis of sex, color, race, yet Plaintiff has not been afforded these promises she believed when she enrolled her children in APS.

157.     When alerted to the breaches established throughout this Complaint, Defendants intently failed to act to correct the denial of opportunities other parents are afforded in APS schools.

158.     As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

## COUNT 11

### Outrageous Conduct

### Samples, Waller, Kloberdanz, Unknown APS Security Officer, Unknown Conspirators, Cazzell, Munn, Eyre, Schreiner, and Francis

159.     By and through the conduct as alleged in or in relation to the conduct described in every paragraph and Count in this Complaint, Plaintiff has established Defendants engaged in conduct that was outrageous, as the conduct is so outrageous in character that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

160.     Defendants did so recklessly and/or with the intent of causing Plaintiff severe emotional distress.

161.     Defendants' conduct caused and continues to cause the Plaintiff to suffer severe emotional distress.

162.     The extreme and outrageous character of Defendants' conduct arises from fact all Defendants have unlawfully ignored their duties to the Plaintiff as persons in positions of trust and ability to take control of Plaintiff's person while having knowledge that Plaintiff as a Black woman is peculiarly susceptible to emotional distress because of physical or mental condition or peculiarity.

163.     As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

# <u>Relief</u>

164.     Plaintiff prays for justice to correct previous and future deprivation of Plaintiff's rights Correction can and should be made to restore the Rights of the Plaintiff, as according to Aurora Municipal Code the direction to leave or not enter has to be given by a teacher, principal, staff member, or person entrusted to maintain and secure the premises; which is not now nor has never been a lawyer in Boulder, Colorado; substantiated through the dismissal of the criminal charge of trespass, again. Plaintiff also moves the Court to order Aurora Public Schools/Adams – Arapahoe 28j District to show cause as to why Plaintiff's conduct prohibited her equal participation in civic engagement

and to perform an investigation into the records which show that Black and Brown people are disparately treated through trespasses on public property which is APS. Without substantiation the act of depriving Plaintiff equal access and enjoyment of addressing the APS BOE in person can only be construed as due to Plaintiff's race, sex, and in retaliation for engagement in protected activities.

165.      Declare Sec. 94-71(a)(4) Aurora, CO Code of Ordinances, impermissibly vague requiring the City to amend the ordinance with Plaintiff to ensure the ordinance properly informs the public;

166.      Declare the conviction of Plaintiff under the ordinance determined to be impermissibly vague to have been done err and order the municipal court correct the record by removing the conviction from court records and any other agency with record of the conviction;

167.      Plaintiff's seeks a permanent injunction against all named Defendants and the respective government entities each Defendant was employed by at the time of this incident, barring any person party to this case, employed or subsequently employed from trespassing the Plaintiff for any conduct without first obtaining permission from this Court after providing the Court at an evidentiary hearing verified evidence with audio and video which would justify the issuance of a trespass directive/order to the Plaintiff regarding any Aurora Public Schools property in perpetuity.

168.      Damages of $40,000,000 for *inter alia*, imprisonment, time, energy, travel to and from court, and extreme emotional distress caused and/or contributed to Plaintiff's depression, anxiety, fear, all of which results in Plaintiff repeatedly being kept from earning salary, wage and independent contractor income, enjoying life, being free.

Defendants' conduct caused and contributed to damaged relationships and reputational harm.

169.      Restitution of costs and losses through the denial of providing Plaintiff's daughter the Free Appropriate Education by forcing Plaintiff to homeschool her daughter;

170.      Punitive damages of all amounts herein;

171.      the costs of this action, including attorney's fees; and

172.      such other relief deemed to be just and equitable.

## VERIFICATION

I, Tiffany Grays declare as follows:

1.      I have personal knowledge of myself and my activities, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

2.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and my activities are true and correct.

DATED: May 11, 2022

      /s/ Tiffany Grays, pro se

Tiffany Grays
PO Box 472322
Aurora, CO  80047
(720) 623-1883
Legalgrays@gmail.com