IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-00926-SKC-KAS

TIFFANY GRAYS,

    Plaintiff,

V.

RICO MUNN, *et al.*,

    Defendants.

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS (DKTS. 42 & 51)**

Plaintiff Tiffany Grays is a longtime resident of Aurora, Colorado, whose children previously attended Aurora Public Schools (APS). Dkts. 21, 21-2.[1] In May 2018, following Plaintiff's daughter's suspension, Defendant APS issued a No Trespass Directive to Plaintiff forbidding her from entering upon any APS properties without express permission due to her prior disruptive behavior while on APS property. Although the May Directive was later rescinded, APS and its attorneys issued another No Trespass Directive to Plaintiff on August 24, 2018.

According to Plaintiff, her conduct on APS property has never been "disruptive, harassing, or threatening." Dkt. 21-2 at ¶41. She alleges she was issued the May and

---

[1] The Court uses "Dkt. ___" to refer to docket entries in CM/ECF.

1

August Directives because of her race and that 40 percent of the persons barred from APS properties in 2018 were African American. *See id.* at ¶40.

On February 6, 2021, Plaintiff requested permission to address the Board of Education (BOE) in person. Dkt. 21-13.[2] Claudia Paz-Blossick, an assistant to the BOE, added Plaintiff's name to the list of in-person speakers. *Id.* When Plaintiff arrived at the meeting on February 16, 2021, however, she was asked to leave by APS's attorneys and at the request of APS Superintendent Rico Munn. Dkt. 21-2 at ¶¶37, 42, 68-71. Aurora Police Officers Zachary Samples and David Waller then arrested Plaintiff based on her violation of the August Directive. *Id.* at ¶86. According to Plaintiff, between August 2018 and May 2021, the APS Defendants, APS attorneys, and Officers Samples and Waller attempted to file, or filed, trespass charges against Plaintiff on seven occasions, including on February 16, 2021. All the criminal charges were dismissed, except for one trespass conviction entered on October 3, 2019. *Id.* at ¶¶79-87.

---

[2] The Court may take judicial notice of this document without converting the motion to dismiss to one for summary judgment. *See Bernice v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (agreeing that in ruling on a 12(b)(6) motion, courts may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice" (cleaned up)).

Plaintiff initiated this action on April 15, 2022, seeking damages and injunctive relief.[3] Dkt. 1. In her Second Amended Complaint (SAC) she asserts federal claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), and 42 U.S.C. § 2000a, along with pendent state law claims. Dkts. 21, 21-2. The APS Defendants[4] and the Aurora Defendants[5] filed separate Motions to Dismiss Plaintiff's claims in their entirety. Dkts. 42, 51. The Court has reviewed the Motions and briefing, the SAC, and prevailing law. No hearing is necessary. For the following reasons, the Motions are GRANTED.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v.*

---

[3] Because Plaintiff proceeds pro se, the Court liberally construes her pleadings, but it does not act as her advocate. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[4] The APS Defendants include APS employees and APS's attorneys, Michael Schreiner and Elizabeth Francis of Caplan and Earnest LLC.

[5] The Aurora Defendants are comprised of Officers Samples and Waller and the City of Aurora.

*Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

Plaintiff's SAC purports to assert 11 claims against the myriad Defendants. The pleading is prolix, discursive, and disjointed, and each of the listed claims is in fact comprised of numerous subclaims asserting various violations of law.

4

Nevertheless, in affording the SAC a liberal construction, the gravamen of Plaintiff's case can be distilled down to three alleged offenses: (1) issuing the May Directive; (2) issuing the August Directive; and (3) preventing Plaintiff from in-person participation at the BOE meeting on February 16, 2021. Although Defendants filed separate motions to dismiss, the Court addresses them jointly because the analysis pertains to all parties in several respects.

### A. Statute of Limitations

The actions underpinning this case and all its claims arise from APS's issuance of the May and August Directives. Plaintiff contends APS's issuance of these Directives violated her First Amendment and substantive due process rights, which she asserts pursuant to 42 U.S.C. § 1983. In addition, she contends the Directives also violated 42 U.S.C. §§ 1981 and 1985, and 42 U.S.C. § 2000a. The APS Defendants contend these claims are barred by the statute of limitations. The Court agrees.

Each of Plaintiff's federal causes of action has a two-year statute of limitations within which Plaintiff must assert her claims. *Harris v. Allstate Ins. Co.,* 300 F.3d 1183, 1191 (10th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Nov. 26, 2002) (Section 1981 claims "continue to be governed by the most analogous state law statute of limitations, here the [Colorado] personal injury statute of limitations.");[6] *Tucker v. Belaski*, 86 F.3d 1167 (10th Cir. 1996) (the statute of

---

[6] In other instances, not implicated here—*i.e.* disputes regarding the making and enforcement of contracts—the statute of limitations may be governed by the four-year statute of limitations in 28 U.S.C. § 1658. *Harris v. Allstate Ins. Co.*, 300 F.3d at 1191.

limitations for a § 1985 action is two years); *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (an action brought pursuant to § 1983 is subject to the statute of limitations of the general personal injury statute in the state where the action arose); Colo. Rev. Stat. § 13-80-102 ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute, must be commenced within two years.").[7]

In this matter, it is undisputed that APS issued the Directives in May and August 2018. Consequently, Plaintiff's federal law claims needed to be filed no later than May and August 2020 to avoid being time-barred. But Plaintiff filed this lawsuit nearly two years beyond that. And while she argues her claims are saved by the doctrines of equitable estoppel and continuing violation, neither of these applies.

State law governs issues of equitable tolling. *Graham v. Teller County, Colo.*, 632 Fed. App'x 461, 463 (10th Cir. 2015). Under Colorado law, equitable tolling of a statute of limitations is appropriate "when flexibility is required to accomplish the goals of justice," such as when a plaintiff does not timely file her claims "because of extraordinary circumstances or because defendants' wrongful conduct prevented [him] from doing so." *Morrison v. Goff,* 91 P.3d 1050, 1053 (Colo. 2004). Equitable

---

Plaintiff's particular claim is not brought under the contract clause of § 1981, but rather, the "full and equal benefit of all laws" clause. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (recognizing four protected interests established under § 1981).

[7] 42 U.S.C. § 2000a does not include a statute of limitations.

tolling is a doctrine applied sparingly. *Federspill v. Denver Pub. Schs.*, No. 17-cv-01480-WJM-STV, 2018 WL 6051335, at *12 (D. Colo. Sept. 12, 2018), *report and recommendation adopted,* No. 17-cv-1480-WJM-STV, 2018 WL 4846507 (D. Colo. Oct. 4, 2018). Plaintiff bears the burden of establishing the factual basis for tolling. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). The district court may properly dismiss an action where the plaintiff fails to plausibly allege entitlement to tolling. *Id.*

In her SAC and Response, Plaintiff contends she was delayed in initiating this action because the APS Defendants' conduct caused "warrants, imprisonment, [and] court dates" that depleted her physical and mental resources, and that she was incapacitated due to COVID-19. Dkt. 21-2 at ¶¶45, 50; Dkt. 64 at p.4. With respect to Plaintiff's parallel criminal matters—which, according to the allegations of her own pleading, resulted from her violations of the No Trespass Directives—this Court is not aware of any cases that would support finding this to be extraordinary or even unusual. "In fact, the Supreme Court does not characterize concurrent litigation as 'unusual,' holding that 'the risk of concurrent litigation ... [is] an entirely common state of affairs,' and observing that it has never 'been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him[.]'" *Shrum v. Cooke*, 60 F.4th 1304, 1309 (10th Cir. 2023) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). *See also Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 150 (Colo. 2007) ("[W]e have

7

repeatedly held that awaiting the result of another case or another legal proceeding is not the type of 'extraordinary circumstance' necessary to equitably toll the statute of limitations.").

And Plaintiff's extensive litigation history fatally undercuts her arguments regarding COVID-19. The Court takes judicial notice of its own records and observes Plaintiff managed to file seven cases in this Court, including abundant motions practice in each, during the two-year statute of limitations period.[8] Furthermore, Plaintiff's allegations and argument regarding COVID-19 are far too conclusory to establish she was incapacitated, and therefore, unable to pursue her cases, especially when considering her status as an e-filer with the federal court since 2018. Thus, equitable tolling is not appropriate under these circumstances. *Chrisco v. Holubek*, 711 F. App'x 885, 888 (10th Cir. 2017).

Turning to Plaintiff's contentions regarding the continuing violation doctrine, it only applies "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (cleaned up). Although Plaintiff contends the August Directive

---

[8] These cases include *Grays v. Auto Mart USA, LLC et al*, No. 18-cv-01761-MSK-NYW (July 10, 2018); *Grays v. TSG Auto et al*, No. 18-cv-01762-SKC-STV (July 10, 2018); *Grays v. Granicus, LLC et al*, No. 18-cv-02271-CMA-NRN (Aug. 31, 2018); *Grays v. KeyBank National Association*, No. 20-cv-00207-SKC (Jan. 24, 2020); *Grays v. Kittredge CO Partners, LLC et al*, No. 20-cv-00208-WJM-SKC (Jan. 24, 2020); *Grays v. BlackHawk Acquisition, LLC, et al,* No. 20-cv-00451-SKC (Feb. 20, 2020); *Grays v. Navient Solutions, LLC et al*, No. 20-cv-00452-NYW-SKC (Feb. 20, 2020).

continues to keep her from attending in-person BOE meetings or other events on APS property, "[a]n important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Hamer*, 924 F.3d at 1099 (citing *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011)). To be sure, Plaintiff's argument is a textbook example of continual ill effects. There are two alleged discrete acts—the May 2018 No Trespass Directive and the August 2018 No Trespass Directive. Any ongoing injuries Plaintiff alleges in this case are a result of these Directives. *See, e.g.*, Dkt. 21-2 at ¶107, 133, 134. Thus, the continuing violation doctrine does not apply, and Plaintiff's claims questioning the legality of the Directives under her federal law claims are barred by the two-year statute of limitations applicable to those respective federal law claims.

**B.     Issue Preclusion**

Moving on, the Court considers Plaintiff's assertions that when APS prohibited her from attending the BOE meeting on February 16, 2021, it did so for discriminatory reasons, such as her race, or in retaliation for her protected speech. *See e.g.* Dkt. 21-2 at ¶¶40, 56, 67, 92. The APS Defendants contend that these claims are barred by the doctrine of *res judicata* based on the outcome in Plaintiff's similar state court action. Dkt. 51 at pp.8-11.

On April 19, 2022, four days after initiating this lawsuit, Plaintiff filed a complaint in the district court for the City and County of Denver asserting a claim of

discrimination against APS.[9] Dkt. 51-4. The factual basis of the state court case is the same as it is here. To be sure, many of the allegations in Plaintiff's state court pleading are identical to those in the SAC. *Compare* Dkt. 51-4 *with* Dkt. 21. Following the state case's transfer to Arapahoe County, District Court Judge Elizabeth B. Volz granted APS's motion to dismiss the case. Dkt. 51-5. Pertinent here, Judge Volz found the basis for denying Plaintiff in-person participation at the February BOE meeting was not "because of her race, sex, or any other factor, but rather the sole reason she was denied entry into the building was a No Trespass Directive in effect at the time." Dkt. 51-5 at p.8.

The problem with Defendants' *res judicata* argument is that, even assuming all applicable elements are met, Defendants are sued here in both their individual and official capacities as employees of APS. The Tenth Circuit has concluded that although employees are in privity with employers when sued in their official capacities, the same is not true when they are sued in their individual capacities. *Willner v. Budig*, 848 F.2d 1032, 1034 (10th Cir. 1988). Thus, even if claim preclusion applied to Defendants in their official capacities, it would not apply to the claims asserted against them in their individual capacities.

---

[9] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). These include matters of public record and state court documents. *See Tal*, 453 F.3d at 1264 n.24; *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (the district court was correct in considering the materials in the state court file).

Nonetheless, Defendants arguments do establish that Plaintiff's federal law claims arising from the events of February 16, 2021, are precluded instead by the doctrine of collateral estoppel, *i.e.*, issue preclusion. "Issue preclusion bars relitigation of a legal or factual matter already decided in a prior proceeding [and] applies regardless of whether the earlier case was based on the same cause of action." *Rodriguez v. Lolotai*, No. 20-cv-02541-PAB-STV, 2022 WL 911132, at *5 (D. Colo. Mar. 28, 2022) (cleaned up).

In deciding this matter, the Court "must afford the state judgment full faith and credit, giving it the same preclusive effect as would the courts of the state issuing the judgment." *Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993); *see also* 28 U.S.C. § 1738 (providing that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken"). The preclusive effect of Plaintiff's state court judgment must be determined under Colorado law. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 100 (10th Cir. 2007).

In Colorado, the party seeking estoppel must establish four separate elements: (1) the issue to be precluded is identical with the one presented in the prior action, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair

11

opportunity to litigate the issue in the prior action. *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999). Only when each of these elements has been satisfied are the equitable purposes of the doctrine furthered by issue preclusion. *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001).

The first three factors need relatively little discussion. Ms. Grays was the Plaintiff in the state court case as she is here, and the issues raised and addressed in that case are identical to those raised in this federal action. Plaintiff asserts in both cases that she was excluded from the February BOE meeting for discriminatory and retaliatory reasons. Judge Volz dismissed Plaintiff's case on the merits concluding Plaintiff exclusion was neither discriminatory nor retaliatory. Although Plaintiff appealed the matter, she failed to file her opening brief and the Colorado Court of Appeals dismissed the case with prejudice. Dkt. 51-7. Thus, the state court judgment is final.

With respect to whether Plaintiff was given a full and fair opportunity to litigate these issues in state court, the Court considers "whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, whether the party in privity in the first proceeding has sufficient incentive to vigorously assert or defend the position of the party against which collateral estoppel is asserted, and the extent to which the issues are identical." *In re Water Rts. of Elk Dance Colorado, LLC*, 139 P.3d 660, 669 (Colo. 2006), *as modified on denial of reh'g* (July 31, 2006).

There is little question Plaintiff had a full and fair opportunity in the state court case to litigate whether her exclusion from the BOE meeting was discriminatory or retaliatory. The remedies and procedures afforded her in the state court matter are materially the same as they are here in federal court. *Compare, for example,* the Colorado Rules of Civil Procedure *with* the Federal Rules of Civil Procedure. Further, there is no credible indication Plaintiff had an insufficient incentive to vigorously assert her position regarding these issues. To be sure, the Court has reviewed the Arapahoe County District Court's docket and Plaintiff's response brief. *Pace,* 519 F.3d at 1072-73. Therein, she makes the same arguments she does in this case—that Defendants excluded her from the same BOE meeting based on her race, gender, color, and in retaliation for her protected speech. And as discussed above, the issues are sufficiently identical.

Accordingly, the Court concludes any claims against the Defendants[10] regarding Plaintiff's exclusion from participating in person at the February BOE meeting are barred by issue preclusion and must be dismissed, with prejudice.

## C. *Heck v. Humphreys*

Following the issuance of the August Directive, Plaintiff was charged and, on October 3, 2019, convicted of violating Aurora Ordinance Sec. 94-71(a)(4), which

---

[10] Although their involvement appears to be limited to Plaintiff's arrest, Officers Samples and Waller are also named in the allegations regarding Plaintiff's exclusion from the BOE meeting. Thus, to the extent Plaintiff intends to include the Officers in the discriminatory exclusion claims, the claims against them are barred by issue preclusion.

13

prohibits trespassing. In her fifth claim, Plaintiff contends the Aurora Ordinance is unconstitutional on its face and as applied to her. Dkt. 21 at ¶¶37. Defendants argue Plaintiff's claim is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). In *Heck,* the Supreme Court held that in a civil rights case seeking damages under 42 U.S.C. § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [an existing] conviction or sentence." *Id.* at 487. A claim which, if successful, results in this implication is not cognizable under § 1983. *Id.* at 486-88.

Plaintiff admits that on October 30, 2019, she was convicted by a jury of her peers of trespassing in violation of the Aurora Ordinance. Dkt. 21-2 at ¶85. She nevertheless contends that because her other charges were dismissed, this Court can consider her arguments. Dkt. 63 at p.7. This is not the law. The dismissal of her other related charges has no effect on her conviction for trespass in violation of the Aurora Ordinance, which still stands. Addressing the constitutionality of the Ordinance *after* her conviction, whether as applied to her or on its face, would necessarily undermine her conviction. Such claims are barred by *Heck* and must be dismissed with prejudice.

**D.     Officers Samples and Waller**

Most of the allegations against Officers Samples and Waller are conclusory and comprised of impermissible group pleading. The only specific facts regarding their conduct are alleged in Plaintiff's cause of action for purported violations of 42 U.S.C. § 1985(3). Dkt. 21-2. Plaintiff states that on February 16, 2021, after she was denied

14

an in-person appearance at the BOE meeting, Officers Samples and Waller arrested her "through the request of [APS Defendants], all based on the No Trespass Directive issued…on August 24, 2018." *Id.* at ¶86. She further alleges neither Samples nor Waller asked Plaintiff whether she had permission to be at the BOE meeting or why she believed she had a right to be there. *Id.* at ¶88. The Court construes Plaintiff's pleadings liberally, as it must, and presumes these facts are meant to support each of Plaintiff's claims against the Officers since these are the only well-pleaded allegations of their respective personal participation in any events alleged in the SAC.

The Court first addresses her claims brought under 42 U.S.C. § 1983. As the Court understands it, Plaintiff claims her arrest was unlawful because it violated her First Amendment and substantive due process rights. The Court, however, agrees with the Officers that they are entitled to qualified immunity because the SAC fails to plausibly allege the violation of a clearly established constitutional right.

As mentioned above, the only well-pleaded allegations of the Officers' personal participation in anything are their arrest of Plaintiff on August 24, 2018. But that fact alone fails to state a plausible claim against the Officers of violating a constitutional right. To be sure, Plaintiff's allegations establish that Officers Samples and Waller were called to the BOE meeting by APS employees because Plaintiff was in violation of the August Directive by trespassing on APS property. The SAC, therefore, pleads the probable cause for her arrest, *i.e.*, the Officers arrested her for trespassing.

15

"In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (reversing a holding that the probable cause determination was a question for the trier of fact because "[i]mmunity ordinarily should be decided by the court long before trial")). "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc). The determination of probable cause is an objective standard, and the Court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal quotations marks and citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). It also applies when an officer's probable cause rests on a mistaken belief. *See Cortez*, 478 F.3d at 1120 (arguable probable cause is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief).

Here, the SAC alleges the Officers were told by APS personnel that Plaintiff was violating the August Directive by trespassing on APS property. Thus, the SAC admits the probable cause for her arrest entitling the Officers to qualified immunity on Plaintiff's § 1983 claims.

Plaintiff's allegations against the Officers also foreclose her claims under §§ 1981, 1985(3), and 42 U.S.C. § 2000a, because each claim requires allegations of discriminatory intent. *See Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001) (under § 1981, a plaintiff must show, inter alia, the defendant had the intent to discriminate based on race); *A.B., by Ybarra v. City of Woodland Park*, 174 F. Supp. 3d 1238, 1249 (D. Colo. 2016) (To prove a private conspiracy in violation of 42 U.S.C. § 1985(3), the conspiracy must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus); 42 U.S.C. § 2000a (prohibiting discrimination or segregation in places of public accommodation based on race, color, religion, or national origin). Here, much as Judge Volz concluded in the state court matter, Plaintiff's allegations admit that Officers Samples and Waller acted based on Plaintiff's violation of the August Directive and the Aurora Ordinance. Any remaining allegations regarding their intent to discriminate against Plaintiff are entirely conclusory if not issue precluded.[11] *See e.g.,* Dkt 21-2 at ¶¶53, 56, 114, 141. Thus, the claims against the Officers should be dismissed with prejudice.

---

[11] Although she has not specifically asserted a claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), Plaintiff has named the City of Aurora as a Defendant and asserts claims against the Officers in their official

17

**E.     State Law Claims**

In addition to the foregoing federal claims, Plaintiff asserts several claims arising under state laws. Dkt. 21-2 at ¶¶139-63. However, when a "district court has dismissed all claims over which it had original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (supplemental jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right"). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Because this Court dismisses all Plaintiff's federal law claims over which it has original jurisdiction, the Court further dismisses the remaining state law claims, without prejudice, under 28 U.S.C. § 1367(c)(3).

---

capacities. However, "[i]t is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation." *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). Because Plaintiff has failed to state a constitutional claim against either officer, any purported *Monell* claim also fails.

\* \* \*

For the reasons shared above, the Defendants' Motions to Dismiss (Dkts. 42 & 51) are GRANTED.

Plaintiff's Federal Claims (1-6) are dismissed with prejudice. The Court declines supplemental jurisdiction over Plaintiff's state law claims (7-11) and dismisses them without prejudice. The Clerk of Court shall close this case.

SO ORDERED.

DATED: May 21, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge